OPINION OF THE COURT
Harold Baer, Jr., J.
Defendants move for summary judgment to dismiss plaintiffs’ complaint in its entirety (CPLR 3212).
Plaintiffs Schroder, Inc. and J. Henry Schroder Bank & Trust Co. (hereinafter Schroder Bank) are engaged in the business of banking. In 1981, plaintiffs sought to acquire a computer software system to increase their business efficiency and profitability. They discussed with defendants Heneo Research, Inc. (hereinafter Heneo), a company engaged in the business of marketing computer software systems, and its former president, Bruno Henry, the viability of purchasing a computer software system sold by Heneo known as the international banking management system (IBMS). Plaintiffs allege that at various times during their negotiations defendants Heneo and Henry represented that the IBMS was a fully developed system that would satisfy the specific requirements *740 of Schroder Bank. Particularly, the IBMS consisted of six systems that could be used independently or integrated in order that plaintiffs’ data could be entered once, yet utilized by all six systems. After a review and analysis of defendants’ proposal by its employees and hired consultants, plaintiffs maintain that Heneo agreed to develop specifications for the delivery, modification, installation and implementation of the IBMS on plaintiffs’ computer.
On August 1, 1982, Schroder Bank and Heneo entered into an agreement for acquisition of the international bank management system phase I. Pursuant to the terms of the agreement, Heneo agreed to deliver and install the foreign exchange (FX) and the client information file (GIF) modules of the IBMS software system. The agreement provides that Heneo will deliver and install the GIF by September 15, 1982, and the FX by October 15, 1982, and that both modules would be working and operational by December 15, 1982. Further, pursuant to the terms of the agreement, Schroder agreed to pay Heneo the program license fee of $60,000, which included the delivery, installation and testing of the application program modules.
Schroder Bank contends that it has fully performed its obligations in accordance with the terms of the parties’ agreement and Heneo has failed to fully perform its obligations pursuant to the agreement’s terms. Plaintiffs assert that Heneo has failed to timely deliver and install the GIF and FX modules, and has failed to have these modules operational. In October of 1983, Heneo was acquired by defendant Hogan Systems, Inc. (hereinafter Hogan) who assumed Henco’s obligations under the agreement.
Thereafter, defendants attempted to correct deficiencies and defects in the GIF and FX modules, but plaintiffs maintain that they were unable to do so, and did not install the modules to conform to the parties’ agreement. On May 1, 1985, Hogan informed Schroder Bank that it had decided not to market the IBMS, later referred to by Hogan as the "MSIB”, based upon financial considerations. Plaintiffs commenced suit against the defendants in January of 1986, and allege the following causes of action: (1) breach of contract; (2) breach of express and implied warranties; (3) intentional and negligent misrepresentations; (4) return of money had and received; (5) deceptive trade practices; and (6) tortious interference with contractual relations. Defendants contend that plaintiffs’ complaint should be dismissed because the causes of *741 action alleged lack merit. Essentially, defendants maintain that plaintiffs hoped to supplant the MSIB software system with a competitor’s package, and unreasonably asked defendants to change the specifications of the modules they were to provide and install. In that regard, defendants maintain that it was Schroder Bank who repudiated the agreement and did not allow Heneo a further opportunity to correct any "minor” problems in the software system.
Several key factual issues are disputed by the parties, precluding summary judgment. First, the parties disagree as to whether defendants fulfilled their obligations pursuant to the parties’ agreement dated August 1, 1982. Plaintiffs contend that the negotiated specifications for the system were not satisfied, whereas defendants assert that whatever specifications the parties originally agreed to were abandoned when plaintiffs repeatedly requested system modifications. A question of fact is presented as to whether defendants satisfactorily performed pursuant to the agreement’s terms.
Similarly, it is disputed whether performance or lack thereof constituted a breach of the express warranty set forth in article 6 of the parties’ agreement. Defendants contend that the six-month warranty period provided in article 6 has expired and plaintiffs cannot maintain an action for breach of this express warranty. However, the six-month warranty period begins to run after plaintiffs have accepted installation of the phase I programs, and it is disputed whether these programs were ever installed in accordance with the proper specifications and accepted by the plaintiffs.
Next, defendants argue that plaintiffs cannot maintain a cause of action sounding in breach of an implied warranty of merchantability, since the parties’ agreement is one for the purchase of services, rather than goods. (UCC 2-314.) However, recent case law demonstrates a willingness of the courts to construe hybrid agreements for the sale of software-hardware packages as falling within the purview of article 2 of the Uniform Commercial Code. (See, Triangle Underwriters v Honeywell, Inc., 604 F2d 737 [2d Cir 1979].) Although the parties’ agreement in the instant matter did not involve sale of computer hardware, but simply a licensure of software, the arrangement should nevertheless be construed to fall within the provisions of UCC article 2. (See, Clark, Barkley and Smith, Christopher, Product Warranties, § 2.04 [2] [b] [iv], where the authors suggest that, "Given the fact that software and hardware are so often offered in combination, and given *742 the courts’ willingness to reason by analogy, it seems likely that sale or licensure of software alone will trigger the Article 2 warranty scheme”; and recommendation of the Committee on Computer Law of the Association of the Bar of the City of New York, that software should be classified as "goods” within the purview of article 2 of the UCC, 40 Record of Assn of Bar of City of NY 754-769 [1985].) Consequently, plaintiffs’ cause of action for breach of an implied warranty of merchantability will be sustained.
Defendants contend that plaintiffs cannot maintain a cause of action for negligent misrepresentation because plaintiffs have failed to establish the existence of a special relationship among the parties. However, this cause of action has been held to exist as between parties to contracts. Thus, plaintiffs’ cause of action for negligent misrepresentation will be sustained. (See, International Prods. Co. v Erie R. R. Co., 244 NY 331 [1927]; Mathis v Yondata Corp., 125 Misc 2d 383 [1984].)
With respect to plaintiffs’ eighth cause of action alleging that defendants have engaged in deceptive acts and practices pursuant to General Business Law § 349, defendants maintain that this cause of action must be dismissed because plaintiff, as a corporate consumer, does not fall within the statute’s protected class. (See, Genesco Entertainment v Koch, 593 F Supp 743 [SD NY 1984].) However, this court has determined that the relevant legislative history indicates that an expansive reading of the statute is preferred, and a corporate consumer may utilize the statute to provide a private right of action. (Sulner v General Acc. Fire & Life Assur. Corp., 122 Misc 2d 597 [1984].) Further, it has been found that a contractual breach of warranty could also give rise to a cause of action under General Business Law § 349. (Associates Capital Servs. Corp. v Fairway Private Cars, 590 F Supp 10 [ED NY 1982].) Consequently, plaintiffs’ cause of action for deceptive acts and trade practices is sustained.
Finally, defendants contend that plaintiffs’ cause of action against Hogan for tortious interference with performance of a contract is without merit since Hogan has a financial interest in the business affairs of Heneo, and, thus, is privileged to interfere in Henco’s arrangement with the plaintiffs. (See, Felsen v Sol Cafe Mfg. Corp., 24 NY2d 682 [1969].) A cause of action for tortious interference with performance of a contract requires the following elements: (1) existence of a valid contract between the plaintiff and a third party; (2) the *743 defendant’s knowledge of the contract; and (3) its intentional interference with the performance of the contract by the third party without justification. (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 108 AD2d 351 [1st Dept 1985].) Plaintiffs have set forth the requisite elements of this cause of action since plaintiffs have alleged that Hogan’s decision to discontinue the MSIB was willful and wanton. The privilege of financial interest is not absolute and will not be sustained where defendants’ acts were motivated by malice. (Felsen v Sol Cafe Mfg. Corp., supra, 24 NY2d, at 687.) Whether Hogan’s decision to cut its International Systems Division was malicious raises a question of fact precluding summary judgment, especially in light of defendants’ testimony that Hogan’s decision to terminate its International Systems Division was caused in part by plaintiffs’ "unreasonable conduct”. Consequently, defendants have failed to sustain their burden of establishing that they are entitled to summary judgment as a matter of law. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].)
Accordingly, defendants’ motion for summary judgment to dismiss plaintiffs’ complaint is denied.