PER CURIAM.
¶1 Thomas Zielinski appeals from an order granting a four-year injunction against him naming his mother, Suzanne Zielinski, as the individual at risk and permitting him only supervised contact with her. Thomas contends his due process rights were violated because he was not given adequate notice and challenges certain evidentiary rulings and the sufficiency of the evidence in the injunction proceeding. We disagree and affirm the order.
¶2 Suzanne has three children: Thomas, who lives in New York, Janet, who lives in Cedarburg, and Robert, who lives in California. On being diagnosed with early dementia in 2012, Suzanne moved from Michigan to Cedarburg to be near Janet and her family and made Janet and Robert co-powers of attorney (POA). On Thomas's visit to Suzanne in July 2015, she removed Janet as POA and named Thomas, with Robert as substitute.
¶3 Soon after, the Ozaukee County Department of Human Services (the County) began receiving calls of concern regarding Suzanne, among them that, unusual for her, Suzanne was not meeting financial obligations, including paying her property taxes. Lisa Harteau, a County social worker, found irregularities in Suzanne's checking account, such as $34,000 in checks Thomas made out to himself and still others to his New York City landlord. The County initiated a guardianship proceeding against Suzanne and petitioned for an injunction against Thomas on grounds of emotional abuse and financial exploitation of Suzanne. Neither of the "2015 cases" was successful.
¶4 In September 2016, the County filed a POA review petition against Thomas. An affidavit of service indicated he had been served but he did not respond or appear at the November 10 hearing. After several witnesses' testimony, the circuit court granted the petition and rescinded Thomas's POA agency. Robert was named POA.
¶5 The next day, November 11, 2016, the County filed the temporary restraining order (TRO)/injunction petition that underlies this appeal. The petition alleged that Suzanne had experienced or was vulnerable to financial exploitation and emotional abuse by Thomas and that he already had interfered, or showed by his conduct that he may interfere, with the County's investigation of Suzanne as an individual at risk and the provision of services to her. The court approved a TRO and set a date for an injunction hearing.
¶6 That same day, Ozaukee County Sheriff's Department deputies went to Suzanne's home to serve the TRO and hearing notice on Thomas, who was helping her ready her home for sale, as he planned to move her to New York. Harteau accompanied them to take Suzanne into protective custody. No one responded to the doorbell or five minutes of knocking on the doors and windows. Robert, as POA, gave Harteau and the deputies telephone consent to enter. The deputies announced "Sheriff's Department" as they entered and repeatedly and loudly declared their presence as they moved through the house. No one answered. They found Thomas in a bedroom up against the wall behind the door. Suzanne was lying in bed covered head to foot with a blanket, "napping," according to Thomas. The deputies handcuffed Thomas and served the TRO; Harteau took Suzanne into protective custody.
¶7 After a two-day evidentiary hearing, the circuit court found reasonable cause to believe that the County proved the financial exploitation, emotional abuse, and interference allegations. See WIS. STAT. § 813.123(3) (2015-16).[1] It granted the injunction and prohibited contact with Suzanne through unsupervised visits or phone calls and letters not approved by her guardian. Thomas appeals.
¶8 We review a circuit court's decision to grant an injunction for an erroneous exercise of discretion. Welytok v. Ziolkowski , 2008 WI App 67, ¶ 23, 312 Wis. 2d 435, 752 N.W.2d 359. We look for reasons to sustain a discretionary ruling. Id. , ¶ 24. The scope of the injunction also is within the circuit court's sound discretion. Id. Although the decision to issue an injunction is a matter of discretion, to grant an injunction under WIS. STAT. § 813.123 the circuit court must find "reasonable cause" that at least one of the statutory bases was proved. Sec. 813.123(5)(a)3. This determination presents a mixed question of fact and law. Welytok , 312 Wis. 2d 435, ¶ 23. We will not set aside the circuit court's factual findings unless they are clearly erroneous. See WIS. STAT. § 805.17(2). We independently review whether, based on the established facts, a reasonable ground exists. See Welytok , 312 Wis. 2d 435, ¶ 23.
¶9 Thomas first argues that the trial court erred in admitting evidence from the 2015 cases. He contends the court's ruling improperly and prejudicially allowed the County to relitigate dismissed charges.[2]
¶10 "We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard." Martindale v. Ripp , 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. We "will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." Id.
¶11 County social worker Harteau testified at the injunction hearing about an attempted welfare check of Suzanne in her home in July 2015, as the County had received "multiple calls" regarding Suzanne's health and safety. She testified that no one answered the telephone or the door although voices could be heard inside, and that the police had to be summoned so she could enter to check on Suzanne. Both Suzanne and Thomas were home. Thomas objected that the evidence was a year and a half old and that the matter now before the court was "a completely new situation."
¶12 The court overruled the objection. It explained that the 2015 evidence bore on whether Suzanne was an elder adult at risk[3] and, as the prior matters had been before a different judge, the 2015 evidence would permit the current court a better grasp of any changes in Suzanne's condition and in her and Thomas's relationship since the County became involved. Because it reasonably concluded that the evidence was relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the trier of fact, see WIS. STAT. § 904.03, the court did not erroneously exercise its discretion.
¶13 Thomas next asserts that, as he did not know about an investigation or the purpose of the officers' visit and Harteau did not announce herself and, as he believed he still was Suzanne's POA, he was entitled to assert her Fourth Amendment rights against the deputies' invasion of her home.
¶14 Assuming for discussion's sake that the officers' warrantless entry into Suzanne's home and bedroom were searches within the meaning of the Fourth Amendment, see State v. Pinkard , 2010 WI 81, ¶ 30, 327 Wis. 2d 346, 785 N.W.2d 592, Fourth Amendment rights are personal and may not be vicariously asserted, State v. Amos , 153 Wis. 2d 257, 284, 450 N.W.2d 503 (Ct. App. 1989). Thomas could not assert the right on his mother's behalf. Nor could he assert a Fourth Amendment right in his own stead. A person claiming to be aggrieved by an allegedly illegal search and seizure of a third person's premises or property has not had his or her Fourth Amendment rights infringed. See State v. Harris , 206 Wis. 2d 243, 248-49, 557 N.W.2d 245 (1996).
¶15 In addition, Fourth Amendment protections depend upon whether the person claiming them has a legitimate expectation of privacy in the invaded place. State v. West , 185 Wis. 2d 68, 91, 517 N.W.2d 482 (1994). Thomas would have known about the TRO and that he no longer was POA had he attended the November 10 hearing, of which he had notice. Beyond that, he did not own the premises and the doors were not locked. Any expectation of privacy was not legitimate.
¶16 Further, the deputies had consent to enter. Police may legally enter a private residence without a warrant when consent is granted. State v. Stout , 2002 WI App 41, ¶ 15, 250 Wis. 2d 768, 641 N.W.2d 474. At the time of entry, the deputies reasonably believed that Robert, as POA, could validly give consent. See Illinois v. Rodriguez , 497 U.S. 177, 188-89 (1990).
¶17 Still further, the deputies were acting within their community caretaker role to ensure Suzanne's welfare. In that role, an officer may conduct a search or seizure without probable cause or reasonable suspicion, as long as the search or seizure satisfies the reasonableness requirement of the Fourth Amendment. State v. Kelsey C.R. , 2001 WI 54, ¶ 34, 243 Wis. 2d 422, 626 N.W.2d 777. When asserted as the basis for the warrantless entry of a residence the matter must be "reasonably exercised under the totality of the circumstances of the incident under review." Pinkard , 327 Wis. 2d 346, ¶ 20. We independently review whether an officer's community caretaker function satisfies the requirements of the Fourth Amendment and article I, section 11 of the federal and state constitutions. State v. Kramer , 2009 WI 14, ¶ 16, 315 Wis. 2d 414, 759 N.W.2d 598.
¶18 The circuit court found reasonable cause to believe that Suzanne's cognitive abilities were in decline, that Thomas was or was likely to engage in emotional abuse and financial exploitation of her, and that he was interfering with the County's investigation of her welfare and needs, such that a TRO was warranted. We conclude that the deputies acted reasonably when they entered the house, even with guns drawn, because they did not know if Suzanne was safe. The State met its burden of proving that the officers' conduct fell within the scope of a reasonable community caretaker function so as to pass constitutional muster.
¶19 Thomas next argues that the circuit court erred in allowing the injunction proceeding to go forward on the emotional abuse and interference claims because the petition did not allege them with particularity in the petition. He complains that, unlike the financial exploitation claim, the other two allegations were made only by means of "boilerplate checkboxes" without alleging particular facts and circumstances that describe and support the specific acts or conduct that constitute the emotional abuse and interference, see Bachowski v. Salamone , 139 Wis. 2d 397, 412-13, 407 N.W.2d 533 (1987), depriving him of notice of what his offending conduct was. "[D]ue process requires that the notice provided [by a petition] reasonably convey[s] the information required for parties to prepare their defense and make their objections." Id. at 412.
¶20 To compare, the petition specifically alleged in regard to financial exploitation that approximately $90,000 had been withdrawn from Suzanne's savings in one year's time, that Thomas had failed to pay her property taxes and other obligations, and that he had written numerous checks made payable to himself. The emotional abuse and interference claims were less precise, essentially restating the statutory language. By checked boxes on the standard form, they alleged that Suzanne was an elder adult at risk because she was age sixty or older and had experienced, currently was experiencing, or is at risk of experiencing abuse, neglect, self-neglect, or financial exploitation, see WIS. STAT. § 46.90(1)(br), and that Thomas either interfered with or, based on his prior conduct, may interfere with an investigation of Suzanne, the delivery of protective placement and services to Suzanne, and that the interference complained of, if continued, would make it difficult to determine whether physical, emotional, or sexual abuse, financial exploitation, neglect, or self-neglect has occurred, is occurring, or may recur, see WIS. STAT. § 813.123(5)(a).
¶21 First, Thomas does not sufficiently identify how the petition's alleged deficiency prejudiced him. He claims he was hampered in preparing for the hearing but does not say what evidence or witnesses he might have produced had the allegations been more expansive. The County presented the bulk of its case on the first day of the injunction hearing, November 18; the second day was November 21. Granted, that was a weekend, but it still gave him time. Moreover, he complains that the County was simply trying to relitigate the allegations it failed to prove in the December 2015 injunction hearing. If so, then he knew at least the emotional abuse component. As he tried to dodge Harteau's home visit in July 2015, the interference allegation also should not have been lost on him.
¶22 Second, we are not persuaded that the petition was fatally vague. In Bachowski , the supreme court addressed the general harassment injunction statute, WIS. STAT. § 813.125, and concluded that a petition that complied with § 813.125(5)(a)"would provide adequate notice." Bachowski , 139 Wis. 2d at 412-13. We see no reason that a petition under the similar individual-at-risk injunction statute should be treated differently. See WIS. STAT. § 813.123(6).
¶23 We have reviewed the petition here and conclude it provides all the information WIS. STAT. § 813.123(6) requires: the names of the petitioner and respondent; that the respondent has engaged in or, based on past conduct, may engage in interference with services and has engaged or threatened to engage in emotional abuse or financial exploitation; and information regarding related court proceedings. Sec. 813.123(6)(a)-(d). We conclude notice was adequate and that his right to due process was not violated.
¶24 We turn to whether the court, as the trier of fact, had sufficient evidence upon which to base its findings that Thomas financially exploited and emotionally abused Suzanne and interfered with the County's investigation into her needs. The test is whether a reasonable trier of fact can be convinced of the respondent's accountability to the required degree of certitude-here, reasonable cause to believe-by the evidence that it has a right to believe and accept as true. See City of Milwaukee v. Wilson , 96 Wis. 2d 11, 21, 291 N.W.2d 452 (1980).
¶25 Support for the financial exploitation allegation included the following testimony: Harteau's July 2015 welfare visit was prompted by "multiple calls" of concern for Suzanne's health and safety, some about atypically unpaid bills, another to report that "her son [who] hadn't been in contact for five years ... all of a sudden came into town," leaving the caller concerned that he "was in town to take mom's money"; Suzanne abruptly changed her POA designation coincident with Thomas's July 2015 arrival; Suzanne's monthly expenses went from an average of $4,500 to an average of $9,000 with Thomas in charge[4] ; Thomas wrote himself checks totaling thousands of dollars ostensibly for expenditure reimbursements, but all were in round figures with no odd cents and had no notation as to purpose; Suzanne's Charles Schwab account dipped by $90,000 in one year and taxes were not paid on withdrawals as had been done in the past; Thomas refused to pay an outstanding landscaping bill and another $2,000 bill that was accruing interest; and he did not pay her property taxes, which also were accruing interest and penalties.
¶26 Thomas calls Harteau's testimony about Suzanne's finances and monthly expenditures "uncorroborated" and "totally unreliable and untrustworthy" because she did not have the documents in front of her. The accounting Thomas presented of his claimed expenditures, however, was unsupported by any receipts, invoices, credit card bills, or other proof. The trier of fact determines the weight of the evidence and witness credibility, and we will not overturn those findings unless they are clearly erroneous. Micro-Managers, Inc. v. Gregory , 147 Wis. 2d 500, 512, 434 N.W.2d 97 (Ct. App. 1988).
¶27 The County also presented evidence of emotional abuse, including that Thomas fostered estrangement between Suzanne and other family members, especially Janet, by replacing pictures on her coffee table of her other children and her grandchildren with pictures of himself; nurturing, nor even gently correcting, even in public, Suzanne's notion that Janet stole money and frequent flier miles from her; seeking, unsuccessfully, to have Janet charged criminally for the alleged airline mileage theft; making numerous calls to police about minor matters involving Janet; and "constant[ly]" monitoring phone calls.[5]
¶28 Thomas argues that the evidence is insufficient to establish emotional abuse because the County did not offer expert testimony and did not prove that Suzanne suffered any harmful effects. The flaw in his argument is that he equates emotional abuse in a case like this with emotional damage in a child-abuse injunction case, where expert testimony is required. See M.Q. v. Z.Q. , 152 Wis. 2d 701, 708-09, 449 N.W.2d 75 (Ct. App. 1989).
¶29 Emotional abuse under the child-abuse injunction statute can mean emotional damage. See WIS. STAT. §§ 813.122(1), 48.02(1)(gm). "Emotional damage," in turn, means:
harm to a child's psychological or intellectual functioning. "Emotional damage" shall be evidenced by one or more of the following characteristics exhibited to a severe degree: anxiety; depression; withdrawal; outward aggressive behavior; or a substantial and observable change in behavior, emotional response or cognition that is not within the normal range for the child's age and stage of development.
Section 48.02(5j). Emotional damage is victim-focused. It is the actual emotional consequence to the victim and requires an assessment of whether it is to a "severe degree." Logically, an expert must make that determination.
¶30 "Emotional abuse" under the individual-at-risk injunction statute, by contrast, means "language or behavior that serves no legitimate purpose and is intended to be intimidating, humiliating, threatening, frightening, or otherwise harassing, and that does or reasonably could intimidate, humiliate, threaten, frighten, or otherwise harass the individual to whom the conduct or language is directed." WIS. STAT. §§ 813.123(1)(a), 46.90(1)(a)2.,(cm). It is actor-focused and looks at conduct that is intended to, that does, or that reasonably could , cause a certain effect. Thus, emotional abuse can occur even if the actor does not achieve the intended result. We find no authority saying expert opinion is needed.
¶31 We also conclude that the evidence is sufficient to demonstrate interference with the County's investigation. When Harteau made a home visit in July 2015 to follow up on reports of concern about Suzanne, Thomas refused to answer the door, necessitating a call to police, then answered questions posed to Suzanne and cut Harteau's visit short, saying they had an appointment.[6] The affidavit of service confirmed that he was served with the POA review pleadings and he conceded that he "received an envelope of documents" while still in New York, undermining his claim that he did not know an investigation had been initiated and thus could not have been interfering. Thomas again was uncooperative, and apparently hid, when the deputies came to serve the TRO.
¶32 Thomas complains that the evidence that he did not respond to the deputies' knocks and announcements also deprived him of adequate notice, as it arose after the injunction petition was filed. We disagree.
¶33 The post-petition evidence did not go to support out-of-the blue assertions but gave context to a pattern of behavior already of concern to the County and of which Thomas was aware. Even without it, there was sufficient pre-petition evidence to support the allegations: among other things, the attempt to thwart Harteau's welfare visit, the increasing isolation of Janet and her family, and the unpaid bills and unsatisfactorily explained bump-up in expenses.
¶34 Further, even if post-petition evidence cannot be used to decide whether grounds exist to issue an injunction, once the court decides to order an injunction, such evidence may be used to determine what conditions should be imposed. S.O. v. T.R. , 2016 WI App 24, ¶ 40, 367 Wis. 2d 669, 877 N.W.2d 408. In S.O. , which involved a child-abuse injunction, the court held that post-petition evidence is admissible to determine appropriate parent-child visitation. Id. That makes sense, as injunctions must be sufficiently specific as to the prohibited acts and conduct so the enjoined person knows what conduct must be avoided. See Bachowski , 139 Wis. 2d at 414. Thus, it was proper for the court to consider it to determine the length of the injunction and what conditions to place on it.
¶35 Overall, Thomas lost the credibility battle to the other witnesses. The court observed that Thomas "d[id]n't score real hot" on any credibility matters, notably his testimony that an attorney advised him not to pay Suzanne's property taxes. The court also "completely discounted" Thomas' claim that he did not hear the deputies arrive because he was wearing headphones, when the deputies did not recall finding Thomas in headphones. Again, it was for the circuit court to decide the credibility issues and weigh the evidence. Micro-Managers, Inc. , 147 Wis. 2d at 512. As the inferences the court drew from the evidence were reasonable, we must accept them. See Cogswell v. Robertshaw Controls Co. , 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). We conclude the court's findings have ample record support, are not clearly erroneous, and demonstrate reasonable grounds to issue the injunction.
¶36 Thomas did not file a reply brief. If he still takes issue with any of the County's positions, that was the time to do it. A party is not bound to file a reply brief, see WIS. STAT. RULE 809.19(4)(a), but we take as conceded points that go unrefuted. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Thomas includes in his appendix a CCAP printout with minutes of the December 2, 2015 injunction hearing. It indicates that the court found that the County did not meet its burden that Thomas engaged in financial exploitation or emotional abuse. Another entry of the same date states, "Order dismissing or vacating TRO/injunction." Despite the County's efforts, the court apparently never signed a written order disposing of the injunction petition, however.

An "elder adult at risk" is a "person age 60 or older who has experienced, is currently experiencing, or is at risk of experiencing abuse, neglect, self-neglect, or financial exploitation." Wisconsin Stat. §§ 813.123(1)(cg), 46.90(1)(br). An elder adult at risk is a subset of "individual at risk." Sec. 813.123(1)(ep).

Even the $4,500 was higher than it should have been, as Suzanne bought numerous unnecessary items from infomercials and television ads. Janet was able to get about $6,000 reimbursed for Suzanne.

Some of the evidence of financial exploitation also could support the allegation of emotional abuse-i.e., the former resulted from the latter.

Suzanne told Harteau their appointment was to make travel plans for a trip to Michigan. Thomas did not correct her. In fact, their appointment was with a lawyer to change Suzanne's POA designations. It is not clear if Suzanne was misled as to the purpose of their appointment or if she was confused. Either way, the change of POA on that day is suspect.