**AMERICAN FAMILY MUTUAL INSURANCE COMPANY and Lim Enterprises, previously d/b/a The Butcher Block Grill, Plaintiffs,**

v.

**SEARS, ROEBUCK & CO., Defendant.**

**No. Civ. A. 95–1425–WEB.**

United States District Court,
D. Kansas.

March 2, 1998.

Jordan E. Clay, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, for Plaintiffs.

Kenneth M. Clark, Young, Bogle, McCausland, Wells & Clark, Wichita, KS, for Defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

This is an action based on allegations of breach of implied warranty of merchantability and breach of express warranty under the Kansas version of the Uniform Commercial Code. Plaintiffs seek damages for economic loss due to the disruption of plaintiff Lim Enterprises' business following a fire which plaintiffs contend was caused by a defective product sold by the defendant. The matter is before the court on defendant's motion for summary judgment. (Doc. 57).

### I. Facts

The following facts are undisputed or stated in the light most favorable to the plaintiffs.

Cheng Lim was at all times relevant to this litigation the president of Lim Enterprises, Inc. Lim Enterprises operated a restaurant called the Butcher Block Grill in Wichita, Kansas. Cheng Lim, with others, personally shopped for and, on November 25, 1991, purchased a laundry center (clothes washer/dryer unit) at the Sears store in Towne East Center in Wichita, Kansas. Towne East Center is approximately one mile from the location of the Butcher Block Grill. Lim took delivery of the laundry center at the Sears Towne East package pickup location. Sears did not deliver or install the laundry center.

At no time was the laundry center ever used other than for its ordinary purpose. It was never dropped, knocked over, or subjected to any improper treatment while in Lim Enterprises' possession.

On December 11, 1991, there was significant rainfall in Wichita, Kansas. There was a leak in the roof of the Butcher Block Grill. The parties dispute the location of the roof leak and whether the laundry center got wet due to the leak.[1]

On December 12, 1991, a repairman had been called to the Butcher Block Grill to work on a piece of equipment unrelated to this litigation. While he was there, a Butcher Block employee asked the repairman to look at the laundry center because it was not believed to be working. The repairman tested the laundry center and it worked. He did

---

1. Plaintiffs contend evidence of water leaks should be excluded at trial. The court does not address that issue as it is not material to disposition of the motion for summary judgment. The court will take up that question at such time as plaintiffs file a motion in limine.

not open the unit or inspect its control panel. Apparently, the Butcher Block employee who asked the repairman to look at the laundry center simply did not know how to use the digital controls. Sears made no service calls on the laundry center before the fire.

On December 13, 1991, a fire started somewhere in the laundry center and spread, causing substantial damage to the restaurant. Defendant's expert witnesses testified that the fire resulted from spontaneous combustion in the drum of the dryer. Plaintiffs' expert witnesses testified that the fire started in the control panel and not the drum. Dr. Everett Johnson, one of plaintiffs' experts, testified in deposition that the fire started as a result of a loose wire connection in the control panel. He could not identify which wire became loose because of the fire damage, but he narrowed it down to two. In an affidavit attached to the response to the summary judgment motion, Johnson specified that in his opinion a manufacturing defect permitted a connection in the control panel to come loose during normal installation or use of the laundry center. In other words, the connection was not secure enough to remain connected during normal operation of the laundry center. He referred to the defect as a "latent short circuit."

## II. Standards for Summary Judgment

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254.

## III. Analysis

### A. Plaintiffs' Affidavit Evidence

In response to the motion for summary judgment, plaintiffs submitted a number of sworn affidavits, including the Johnson affidavit discussed above. Defendant argues that Johnson's affidavit conflicts with his deposition testimony and should therefore be disregarded for purposes of deciding whether summary judgment is appropriate. It is well established that a party opposing a motion for summary judgment cannot establish a genuine issue of fact by offering an affidavit which conflicts with the affiant's prior deposition testimony. *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986). Here, Johnson's affidavit does not contradict, but merely clarifies his earlier deposition testimony. It is, therefore, competent evidence to oppose a motion for summary judgment.

Likewise, defendant contends Cheng Lim's affidavit conflicts with his deposition testimo-

ny that he did not have any personal knowledge about the use of the laundry center. Lim swore in his affidavit that the laundry center was never misused or subjected to any trauma between the time of purchase and the time of the fire. Having compared the deposition testimony with the affidavit, the court concludes that they are not so contradictory as to warrant striking the affidavit. Lim's deposition testimony on the points at issue is ambiguous, and the court cannot resolve that ambiguity in defendant's favor on summary judgment.

### B. Breach of Implied Warranty

■ Under Kansas law, to succeed on a claim for economic loss due to a breach of implied warranty of merchantability, a plaintiff must establish: (1) that the product was defective; (2) that the defect existed at the time it left the defendant's possession or control; and (3) that the defect caused the injury sustained by the plaintiff. *Lane v. Redman Mobile Homes, Inc.*, 5 Kan.App.2d 729, syl. ¶ 2, 733–34 624 P.2d 984 (1981). The plaintiff can prove these elements by direct or circumstantial evidence. *Voelkel v. General Motors Corp.*, 846 F.Supp. 1468, 1476 (D.Kan.1994). The Kansas Supreme Court has stated:

> For circumstantial evidence to make out a prima facie case, it must tend to negate other reasonable causes, or there must be an expert opinion that the product was defective. Because liability in a products liability action cannot be based on mere speculation, guess or conjecture, the circumstances shown must justify an inference of probability as distinguished from mere possibility. While a plaintiff is not normally required to prove his case at the summary judgment stage, he must present some facts to support the elements of his claim.

*Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 54, 661 P.2d 348 (1983). Defendant argues that plaintiffs fail to provide evidence on all three elements.

■ First defendant contends the plaintiffs' expert testimony is too speculative to create a genuine issue of fact as to defect. The court disagrees. Dr. Johnson testified that there was a defective wire connection in the laundry center's control panel and that the loose wire connection caused the fire. He based this opinion partly on his inspection of the burn patterns in the laundry center and partly on his ability to eliminate other causes. Johnson's opinion is bolstered by other expert testimony that the fire originated in the control panel. This is sufficient evidence to create a jury question as to the existence of a defect. *Farmers Ins. Co. v. Smith*, 219 Kan. 680, 549 P.2d 1026 (1976).

■ Next, defendant contends plaintiffs' evidence is insufficient on the question of whether the alleged defect existed at the time defendant had control over the laundry center. Defendant contends there is no evidence to eliminate other causes. Again, the court disagrees. The plaintiffs can prove this element of its claim by circumstantial evidence. *Voelkel*, 846 F.Supp. at 1476. In this case, the fire occurred within three weeks of Lim Enterprises' purchase of the laundry center. It traveled only one mile from Sears Towne East store to the restaurant. There is no evidence that the laundry center was ever subjected to any unusual or unintended forces, whether misuse, mishandling, or the forces of nature.[2] There is expert testimony that the fire started in the control panel, which was located inside the unit and could not be reached without opening the unit. Any evidence that someone opened the unit to repair it or for any other reason is controverted.

The plaintiffs' evidence in this case is substantially stronger than the evidence before the court in the *Smith* case cited above. In that case, the insured's mobile home had caught fire, and the plaintiffs, both insurance companies, presented expert witness testimony that the fire was caused by a loose connection in the circuit breaker box. *Smith*, 219 Kan. at 680, 682, 685, 549 P.2d 1026. The Kansas Supreme Court affirmed the trial court's decision to direct a verdict for the defendant manufacturer on the breach of im-

---

**2.** In fact, Cheng Lim's affidavit is affirmative evidence that the laundry center was never subjected to such forces.

plied warranty claim because there was insufficient evidence that the alleged defect existed when the mobile home left the defendant's possession. *Id.* at 691, 549 P.2d 1026. After the sale, the mobile home had traveled some 300 miles. *Id.* at 681; 549 P.2d 1026. The insureds had lived in the home for more than two months. *Id.* at 691, 549 P.2d 1026. They had hired an electrician, who had access to the breaker box. *Id.* at 681–82, 691, 549 P.2d 1026. In fact, the area where the defect was alleged to have existed was accessible to any person using the home. *Id.* at 691, 549 P.2d 1026. Plaintiffs' expert witness testified that the connection could have come loose after the mobile home was set up. *Id.* at 687, 688, 549 P.2d 1026.

The plaintiffs here have presented sufficient evidence to negate other reasonable explanations for when the defect existed. Plaintiffs' expert witness also provides direct evidence that the control panel was defectively manufactured so that a connection would come loose during ordinary operation. Plaintiffs have, therefore, established a genuine issue of fact as to the second element of their claim.

Finally, the defendant argues the plaintiffs have not shown causation because they have not shown a defect. The court rejects this argument for reasons stated above. To the extent defendant intends to argue that a water leak was an intervening and superseding cause of the fire, the plaintiffs have met this argument with competent evidence to establish a jury question. Defendant has not met its initial burden on any claim it may be making that the laundry center was misused or mishandled by anyone at Lim Enterprises or otherwise subjected to abuse that would constitute an intervening or superseding cause of the fire.

For the foregoing reasons, the court denies defendant's motion for summary judgment on plaintiffs' breach of implied warranty of merchantability claim.

## C. Breach of Express Warranty

Sears also seeks summary judgment on the plaintiffs' claim for breach of express warranty. Plaintiffs concede there is no genuine issue of material fact on this claim. Accordingly, the court grants defendant's

motion for summary judgment on the express warranty claim.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 57) is hereby granted in part and denied in part.