# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| URBAN CONCEPTS LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | C.A. No. N19L-02-055 MAA |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HAROLD GRUBER and SANDRA HUDAK, | ) | |
| | ) | |
| Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JENNIFER SCHMITZ, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

Submitted: April 3, 2023
Decided: July 7, 2023

*Upon Third Party Defendant, Jennifer Schmitz's Motion for Summary Judgment:*
GRANTED.

*Upon Defendants-Counterclaim Plaintiffs-Third-Party Plaintiffs' Motion for Partial Summary Judgment:*
DENIED.

*Upon Third-Party Defendant and Counterclaim Defendant, Jennifer Schmitz and Urban Concepts' Motion to Permit an Adverse Inference Jury Instruction Regarding Spoliation at Trial:*
DENIED.

*Upon Third Party Defendant, Jennifer Schmitz and Counter Claim Defendant, Urban Concepts', Motion in Limine to Exclude the Third-Party Plaintiffs' Liability Expert, Frederick S. Roland and Partial Summary Judgment:*
DENIED.

*Upon Defendants-Counterclaim Plaintiffs-Third-Party Plaintiffs' Motion in Limine to Exclude the Testimony-Opinions of Michael F. Ferrier, Jr.:*
DENIED IN PART and GRANTED IN PART.

## MEMORANDUM OPINION

Karl Hill, Esquire (Argued), of SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware, Attorney for Plaintiff Urban Concepts, LLC.

Dean R. Roland, Esquire (Argued), of COOCH AND TAYLOR P.A., Wilmington, Delaware, Attorney for Defendants/Counterclaim Plaintiffs/Third Party Plaintiffs Harold Gruber and Sandra Hudak.

Michael I. Silverman, Esquire (Argued) and Adrienne M. McDonald, of SILVERMAN, MCDONALD & FRIEDMAN, Wilmington, Delaware, Attorneys for Third-Party Defendant Jennifer Schmitz and Counterclaim Defendant Urban Concepts.

**ADAMS, J.**

# BACKGROUND

The Court, through this decision, resolves the various pre-trial motions filed by the parties. This action arises from a claim for a mechanic's lien initiated by Plaintiff, Urban Concepts, LLC ("Urban") against Defendants Harold Gruber and Sandra Hudak (the "Homeowners"). Urban is a Delaware Limited Liability Company engaging in the business of residential home renovations. Jennifer Schmitz ("Schmitz") is the sole owner and sole employee of Urban.

In March 2018, Urban and the Homeowners entered into a home renovation contract (the "Contract"). After multiple issues that arose during construction, Urban terminated the Contract in November 2018. Urban filed its mechanics' lien complaint in February 2019, claiming it was due $18,990.58, representing the amount due in connection with labor and materials provided by Urban to the Homeowners at their residence.

In March 2019, the Homeowners filed an answer, counterclaim, and third-party complaint against Schmitz. The third-party complaint contains one count for negligence against Schmitz, alleging that Schmitz "personally participated in, directed, and approved the renovation, [and] undertook a complete renovation of [the Homeowners] Property." Therefore, the Homeowners argue, Schmitz is personally liable for the amount necessary to repair the Homeowners' property.

3

# ANALYSIS

## I. Third Party Defendant Jennifer Schmitz's Motion for Summary Judgment

Schmitz moves for summary judgment, arguing that all claims arise directly from the Contract between Urban Concepts and the Homeowners. Schmitz also argues there is no evidence that Schmitz acted in her individual capacity, or that she directed Urban to act negligently. The Homeowners argue that Schmitz's deposition testimony demonstrates that although the Defendant's "claim against Schmitz 'stems' from a contract, the claim against Schmitz sounds in negligence."[1]

A court will grant summary judgment only if the moving party can establish that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[2] All facts will be viewed in a light most favorable to the non-moving party.[3] "When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law."[4] A motion for summary judgment is properly granted "against a party who fails to make a showing

---

[1] Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs' Opposition to Third-Party Defendant's Motion for Summary Judgment at 1-2.
[2] Super. Ct. Civ. R. 56(c).
[3] *Burkhart v. Davies*, 602 A.2d 56, 58-59 (Del. 1991).
[4] *GMG Ins. Agency v. Margolis Edelstein*, 2023 WL 2854760, at *2 (Del. Super. Apr. 10, 2023) (citation omitted).

4

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[5]

The Homeowners argue Schmitz should be held personally liable for the amount necessary to repair the Property. To resolve this issue, the Court is guided by the Delaware Limited Liability Company Act and agency principles. The LLC Act provides, in part, that the:

> debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manger of the limited liability company.

Under agency principles, "acts taken by [a] corporate principal are not automatically imputed to its agents."[6] A corporate officer "may be liable in tort only when she is actively involved in the commission of the tort in that she directed, ordered, ratified, approved, or consented to the tort."[7] An officer may only be "held liable for misfeasance or active negligence and not for nonfeasance or the omission of an act."[8]

---

[5] *Reybold Grp., Inc. v. Chemprobe Tech., Inc.*, 721 A.2d 1267, 1270-71 (Del. 1998) (citation omitted).

[6] *Gassis v. Corkery*, 2014 WL 3565418, at \*5 (Del. Ch. July 21, 2014).

[7] *Id. See also Spanish Tiles, Ltd. v. Hensey*, 2009 WL 86609, at \*2 (Del. Super. Jan. 7, 2009) ("The personal participation doctrine attaches liability to corporate officers for torts which they commit, participate in, or inspire, even though they are performed in the name of the corporation.") (internal citations and quotations omitted).

[8] *Id.*

The Homeowners, in opposing summary judgment, rely heavily on Schmitz's deposition testimony where Schmitz testified that she "was actively involved in the construction work."[9] The Court has reviewed extensively Schmitz's deposition transcript and cannot find any evidence that Schmitz acted within her individual capacity or that she directed Urban to act negligently. Merely alleging that a principal was "actively involved," with no supporting evidence, is not enough to raise a genuine issue of material fact to defeat summary judgment.

At most, the Homeowners point to four instances of Schmitz's participation in construction. None of these instances, however, demonstrate that Schmitz actively directed the destructive outcome. Rather, when the deposition is read as a whole, rather than taking lines out of context, Schmitz's purported participation at most amounts to an omission.[10] Therefore, Schmitz's Motion for Summary Judgment is **GRANTED**.

---

[9] Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs' Opposition to Third Party Defendant's Motion for Summary Judgment, ID 67706019, at 2.

[10] See *Griffith v. Energy Indep., LLC*, 2017 WL 6403509, at *5 (Del. Super. Dec. 13, 2017) (holding that "[a]lthough the amended complaint does allege [the principal] directed the renovation that eventually led to the mold growth, [the principal's] actions…would at most amount to an omission."). In *Sens Mechanical, Inc. v. Dewey Beach Enter., Inc.*, 2015 WL 4498900, at *5 (Del. Super. June 23, 2015) the Court held that at the summary judgment phase, the plaintiff could state a claim for fraud against the principal. There, the court found that even "minimal involvement in a fraudulent scheme" would be sufficient for the Court to find persona liability on behalf of the principal. Here, even after discovery, the Homeowners cannot cite to nothing more than a few quips from Schmitz's

6

## II. Defendants-Counterclaim Plaintiffs-Third Party Plaintiffs' Motion for Partial Summary Judgment

The Homeowners, by this motion, move for partial summary judgment regarding termination of the Contract. The Homeowners argue that Urban "wrongfully terminated" the Contract by not providing the required notice and opportunity to cure as provided for in Section 11.2 of the Contract.[11] According to the Homeowners, the Contract "provides that the contractor may only terminate the Contract for owner breach that is notified in writing and cure does not begin within seven (7) days."[12] The Homeowners, with no citations to the record, argue that "Schmitz testified that there was never a time where written notice was provided and the alleged breach was not cured within seven (7) days."[13]

The Homeowners' argument does not find support in the Contract. The relevant provision in the Contract states:

> 11.2 Termination by Contractor. If the Owner breaches any of its obligations under this Agreement, then Contractor may give Owner written notification identifying such breach. If Owner has not cured such breach within seven (7) calendar days from its receipt of Contract's written notification, or if such breach cannot be cured within such seven (7) day period, then if Owner either does not begin cure

---

deposition that do not come close to demonstrating that Schmitz directed Urban Concepts to act negligently.

[11] Defendants' Motion for Partial Summary Judgment at 5 (Transaction ID 67486061).

[12] *Id.* at 4.

[13] *Id.* at 5.

within such seven (7) day period or fails to diligently prosecute cure to completion, Contractor may terminate this contract.[14]

As Urban points out in its opposition, the purpose of the notice and cure provision in this contract is to *continue* the contractual relationship, not to sever it.[15] In other words, under this provision, if a contractor gives notice to its counterpart of a purported breach, and the breach is cured, the Contract continues. If there is no cure, termination of the relationship follows. Even if the Homeowners' interpretation of Section 11.2 was correct, there is, at minimum, a factual issue on whether there was a breach and whether the Contract was terminated by mutual assent.[16] Therefore, the Homeowners' Motion for Partial Summary Judgment is **DENIED**.

### III. Counterclaim Defendant Urban Concepts and Third-Party Defendant Jennifer Schmitz's and Motion to Permit an Adverse Inference Jury Instruction Regarding Spoliation at Trial

Urban and Schmitz argue that the Court should permit an adverse inference instruction based the purported failure of the Homeowners' expert to preserve evidence. Shortly after the termination of the Contract, the Homeowners, through

---

[14] *Id.* at 3 (emphasis added).

[15] Opposition to Counterclaim Plaintiffs' Motion for Partial Summary Judgment at 2 (Transaction ID 67705072).

[16] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962) ("Under no circumstances…will summary judgment be granted when, from the evidence produced, there is a reasonable indication that a material fact is in dispute. Nor will summary judgment be granted if, upon an examination of all the facts, it seems desirable to inquire thoroughly into them in order to clarify the application of the law to the circumstances."). (citation omitted).

counsel, retained Frederick S. Roland ("Mr. Roland") to examine the property. The Homeowners' counsel instructed Mr. Roland to "take a look at the construction out there … [and] take a walk through and render an opinion as to what I saw."[17] Mr. Roland examined the property in February 2019.

During Mr. Roland's inspection, he took notes regarding his observations and made a verbal report to the Homeowners' counsel where he identified issues, including a "very dicey situation" within the framing.[18] Following Mr. Roland's inspection and verbal report, shared only with the Homeowners' counsel, the Homeowners retained multiple contractors to complete construction on the addition.[19] Urban and Schmitz claim that by this construction, the Homeowners "intentionally altered/destroyed evidence of the alleged construction defects with full knowledge that evidence of the defects was relevant to an imminent legal dispute."[20]

The relevant legal standard regarding an adverse inference in the context of spoliation is not in dispute. "An adverse inference instruction is appropriate where a litigant intentionally or recklessly destroys evidence, when it knows that the item

---

[17] Third-Party Defendant and Counterclaim Defendant's Motion to Permit an Adverse Inference Jury Instruction Regarding Spoliation at Trial, Transaction ID 67486342, at ¶7.
[18] *Id.* at ¶8.
[19] *Id.* at ¶10.
[20] *Id.* at ¶13.

in question is relevant to a legal dispute or it was otherwise under a legal duty to preserve the item."[21] Prior to giving an adverse inference jury instruction, "a trial judge must, therefore, make a preliminary finding that the evidence shows such intentional or reckless conduct."[22]

Here, it is important to put the "intentional" and "reckless" standards in context. The Delaware Pattern Jury Instructions for Civil Practice provide the following definitions:

> Intentional conduct means conduct that a person undertook with a knowing desire or with a conscious objective or purpose.[23]
>
> Reckless conduct reflects a knowing disregard of a substantial and unjustifiable risk. It amounts to an "I don't care" attitude. Recklessness occurs when a person, with no intent to cause harm, performs an act so unreasonable and so dangerous that he or she knows, or should know, that harm will probably result.[24]

Recklessness also connotes a "conscious indifference of others," and requires: "(1) an act; and (2) the foreseeability of harm resulting from the act that the actor perceived or should have perceived."[25] Therefore, "drawing an adverse inference is appropriate when an actor is under a duty to preserve evidence and takes part in the

---

[21] *Beard Rsch., Inc. v. Kates*, 981 A.2d 1175, 1191 (Del. Ch. 2009) (quoting *Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542, 552 (Del. 2006)).
[22] *Id.*
[23] Del. P.J.I. Civ. § 5.8 (2000).
[24] Del. P.J.I. Civ. § 5.9 (2000).
[25] *Nationwide Mut. Fire. Ins. Co. v. Delmarva Power & Light Co.*, 2009 WL 684565, at *11 (Del. Super. Mar. 16, 2009)(quoting *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987)).

10

destruction of evidence while being consciously aware of a risk that he or she will cause or allow evidence to be spoiled by action or inaction and that risk would be deemed substantial and unjustifiable by a reasonable person."[26]

Urban and Schmitz request an adverse inference jury instruction based on the Homeowners' expert's purported failure to preserve the entire Property – the subject of this litigation. According to Urban and Schmitz, the Homeowners were under a duty to hold the gutted Property in an incomplete state, open to the elements without any interior finishes, until they had another chance to inspect the Property after the litigation commenced. The Court finds that no such duty existed under the facts and circumstances of this case. The Homeowners made Urban and Schmitz aware of the issues with their home. Urban and Schmitz knew the Homeowners were planning to have the defective work repaired and the project completed, as Schmitz suggested another contractor to finish the job.[27]

This is not a circumstance where a party destroyed documents,[28] deleted information on a cell phone,[29] destroyed business records,[30] wiped a computer hard

---

[26] *Kates*, 981 A.2d at 1192.
[27] Defendants' Opposition to Third-Party Defendant and Counterclaim Defendant's Motion to Permit an Adverse Inference Jury Instruction, at ¶¶13-14.
[28] *Kates*, 981 A.2d at 1192-93.
[29] *Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *30 (Del. Ch. July 22, 2015).
[30] *Midcap*, 893 A.2d at 546-47.

11

drive,[31] or deleted emails.[32] Rather, this is an action where a contractor walked off a job and the homeowners were under a duty to mitigate their damages.[33] Also, "[a]s a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts."[34] Therefore, the Homeowners did not act intentionally or recklessly in having the Property repaired. The Homeowners were not under a duty to preserve the Property in a state of disrepair after Urban and Schmitz decided to inspect the Property after they walked off the job – if they ever decided to inspect the Property at all.[35] Therefore, Urban and Schmitz's Motion to Permit an Adverse Inference is **DENIED**.

**IV.** **Third Party Defendant Jennifer Schmitz and Counter Claim Defendant Urban Concepts' Motion *in Limine* to Exclude the Third-Party Plaintiffs' Liability Expert, Frederick S. Roland, and Partial Summary Judgment**

Urban and Schmitz move, pursuant to Superior Court Civil Rule 702, to exclude the Homeowners' liability expert, Frederick S. Roland. Urban and Schmitz

---

[31] *TR Investors, LLC v. Genger*, 2009 WL 4696062, at *17 (Del. Ch. Dec. 9, 2009).
[32] *OptimisCorp v. Waite*, 2015 WL 5147038, at *22 (Del. Ch. Aug. 26, 2015).
[33] *Wilson v. Pepper*, 1995 WL 562235, at *4 (Del. Super. Aug. 21, 1995), *aff'd*, 676 A.2d 909 (Del. 1996).
[34] *West Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 WL 458779, at *4 (Del. Ch. Feb. 23, 2009) (quoting Restatement (Second) of Contracts § 350 cmt. b (1981)).
[35] During oral argument, counsel for the Homeowners represented that Urban inspected and warranted the work at the Property, including their own structural engineer. (Tr. at 53). Also, counsel for the Homeowners represented that neither Schmitz nor Urban has ever asked for a site inspection. (Tr. at 54).

12

also move for partial summary judgment on the grounds that without expert testimony, the Homeowners are unable to establish that Urban and Schmitz proximately caused the damage to the Property. Essentially, Urban and Schmitz argue that Mr. Roland should be excluded as an expert because "he is not able to pinpoint each contractor's work," but only "wrote a laundry list of the perceived defects and [leaves] the jury to speculate as to whether Urban Concepts/Ms. Schmitz's actions were the cause of those defects."[36]

The Court will first address Urban and Schmitz's challenges to Mr. Roland's expert report. Mr. Roland made two site visits to the Property. On February 17, 2019, Mr. Roland's first visit to the Property, only Schmitz, Urban and the subcontractors were working on the Property. The second visit to the Property, on December 18, 2020, was after the replacement contractor finished working on the property.[37]

Mr. Roland, in his report, lists twenty-five items which he found to be defective within the construction of the Property. The report, however, does not identify which contractor was responsible for each alleged defect. Urban and

---

[36] Third Party Defendant and Counterclaim Defendant Jennifer Schmitz/Urban Concepts' Motion *in limine* to Exclude the Testimony of Frederick S. Roland and Motion for Partial Summary Judgment, Transaction ID 67486387, at ¶16; Letter to Court from Michael I. Silverman dated March 2023, Transaction ID 69591119.
[37] Defendants' Opposition to Third-Party Defendant and Counterclaim Defendant's Motion *in limine* to Exclude the Testimony of Frederick S. Roland and Motion for Partial Summary Judgment, Transaction ID 69035806, at 3-4.

Schmitz argue that this makes Mr. Roland's expert report speculative and inadmissible.

Superior Court Civil Rule 702 governs the admissibility of expert testimony. The Supreme Court of Delaware has adopted the United States Supreme Court's holding in *Daubert v. Merrell Dow Pharm., Inc.*,[38] holding that an expert's opinion be based upon a proper factual foundation and sound methodology to be admissible.[39]  In *Perry v. Berkley*, the Supreme Court reviewed the connection between D.R.E. 702 and F.R.E. 702, specifically whether an expert's "testimony is based upon sufficient facts or data."[40]  The Supreme Court reviewed multiple secondary sources regarding Rule 702(1), and held that the proposed expert was properly excluded because the expert, a non-treating physician, did not know of plaintiff's prior back injury and multiple treatments for her injury prior to the accident.  Therefore, the Supreme Court held that plaintiff's expert rendered an "opinion based upon a ***completely incorrect*** case specific factual predicate."[41]

This case is not comparable to *Perry* or any of the other cases cited by Urban and Schmitz.[42]  Urban and Schmitz have not pointed to any incorrect facts or data

---

[38] 509 U.S. 579 (1993).

[39] *Perry v. Berkley*, 996 A.2d 1262, 1267 (Del. 2010) (citations omitted).

[40] *Id.*

[41] *Id.* at 1271.  (emphasis in original).

[42] The Court, after oral argument, requested that the parties address the issue of whether a court had ever granted a *Daubert* motion for failure to identify specific contractors. *See Urban Concepts LLC v. Gruber et al.*, C.A. N. N19L-02-055 MAA

14

that Mr. Roland relied on in reaching his opinions. Rather, Urban and Schmitz argue that Mr. Roland did not consider whether another contractor's actions could have caused the Homeowners' injuries. There is no dispute that Mr. Roland inspected the Property twice and provided a report. The fact that Mr. Roland could not identify specific contractors or the work that the subcontractors performed in his report is not a basis for the exclusion, and Urban and Schmitz do not point to a case to support such a result.[43] Therefore, Urban and Schmitz's Motion *in Limine* to Exclude the Expert Testimony of Frederick Roland is **DENIED**. Because the Court is not excluding Mr. Roland's expert report, Urban and Schmitz's Motion for Partial Summary Judgment is also **DENIED**.

V. **Defendants-Counterclaim Plaintiffs-Third-Party Plaintiffs' Motion *in Limine* to Exclude the Testimony-Opinions of Michael F. Ferrier, Jr.**

The Homeowners move, pursuant to D.R.E. 702 and 703, to exclude the testimony and opinions of Michael F. Ferrier, Jr. ("Mr. Ferrier"). Mr. Ferrier, in his report, provides the following four opinions: (1) the contract price of the Project was "roughly estimated" at $208,200.00, subject to change based on additions and

___

(Transcript at 63-64). On March 20, 2023, Urban and Schmitz filed a letter citing case law that focused on whether an expert had "sufficient facts or data," but not addressing the specific issue that the Court requested. *See* March 20, 2023 Letter from Michael I. Silverman, Esq. (Transaction ID 69591119).

[43] Urban and Schmitz do not challenge Mr. Roland's methodology and, therefore, the cases cited by Urban and Schmitz on that point do not apply. Likewise, Urban and Schmitz do not challenge Mr. Roland's education training and experience to offer an expert opinion in this matter.

subtractions; (2) the cost to repair and replace the roof on the Project was $81,264.00, based on the testimony of Leonard Bafundo [the roofing expert]; (3) the Homeowners could have saved over $69,000.00 on the roof repair had they selected a different contractor; and (4) the Cooperson Associates Engineering Report should have been released to Urban, the Homeowners, or any other contractor, in the form of a punch list, to provide an opportunity to make corrections, if necessary.[44]

First, the Homeowners argue that Mr. Ferrier's report and testimony should be excluded because Mr. Ferrier is not a roofing expert. Therefore, the Homeowners argue, Mr. Ferrier cannot offer an opinion as to the cost to repair the roof or how much the Homeowners could have saved had they selected a different contractor. Although not explicitly stated by the Homeowners, the Homeowners appear to argue that Mr. Ferrier is not qualified to provide an expert report on the roof and that Mr. Ferrier's methodology is not reliable.[45] Both arguments fail.

---

[44] Counterclaim Defendant and Third-Party Defendant's Opposition to Defendant/Third Party Plaintiffs' Motion *in Limine* to Exclude the Expert of Michael F. Ferrier, Jr., Ex. B, Expert Report of Michael F. Ferrier, Jr. at 10-11 (Transaction ID 69041618).

[45] The Court, when considering the admissibility of an expert pursuant to D.R.E. 702 and 703, must decide that: (1) the witness is qualified as an expert by knowledge, skill, experience, training or education, (2) the evidence is relevant and reliable, (3) the expert's opinion is based upon information reasonably relied upon in experts in that particular field, (4) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury. [case cite]

16

As a preliminary matter, Urban and Schmitz concede that Mr. Ferrier is not being offered as a structural roofing expert, and they will be held to that concession.[46] Regarding Mr. Ferrier's experience, Mr. Ferrier has more than fifty years of residential and commercial construction experience, including both "boots on the ground" and management. Moreover, Mr. Ferrier is entitled to rely on the facts and data in this case, including other expert reports, so long as it is information regularly relied upon by experts in his field. Given that the Homeowners' own expert relies on other expert reports in forming the basis of his opinion, the Homeowners cannot seriously argue that Mr. Ferrier's opinion should be excluded on this basis.[47] Therefore, the Court will not exclude Mr. Ferrier's opinions (2) and (3) regarding the repairs to the roof at the Property.

The Court will also permit Mr. Ferrier to testify regarding the cost of the Project. During oral argument, the Homeowners did not challenge Mr. Ferrier's first opinion that the contract price was "roughly estimated" to be $208,800.00.[48] Whether Mr. Ferrier was aware of change orders for the Project is a proper subject for cross-examination and not exclusion.

---

[46] Opposition to Motion *in Limine* to Exclude the Expert Report of Michael F. Ferrier, Jr. at ¶10.

[47] Counterclaim Defendant and Third-Party Defendant's Supplemental Brief to the Motion in Limine to exclude expert Frederick S. Roland, Ex. A, Expert Report of Frederick S. Roland. at 2 (Transaction ID 69591119).

[48] Transcript at 76.

The Court, however, will not permit Mr. Ferrier to testify about whether Urban and Schmitz should have been given an opportunity to perform "punch list" type corrections.  Whether a contractor who walked off the job is entitled to come back on site and perform "punch list" work is not based on scientific, technical, or other specialized knowledge.[49]  Moreover, a punch list report typically comes at the conclusion of construction or renovation, and there is no dispute that Urban did not come close to finishing the Project.[50]  As such, this opinion is not supported by sufficient facts or data and must be excluded.  Therefore, the Homeowners' Motion to Exclude the Testimony of Mr. Ferrier is **DENIED IN PART and GRANTED IN PART.**

## CONCLUSION

For the reasons stated herein, Third Party Defendant, Jennifer Schmitz's Motion for Summary Judgment is GRANTED; Defendants-Counterclaim Plaintiffs-Third-Party Plaintiffs' Motion for Partial Summary Judgment is DENIED; Third-Party Defendant and Counterclaim Defendant, Jennifer Schmitz and Urban Concepts' Motion to Permit an Adverse Inference Jury Instruction Regarding Spoliation at Trial is DENIED; Third Party Defendant, Jennifer Schmitz and Counter Claim Defendant, Urban Concepts', Motion *in Limine* to Exclude the Third-Party

---

[49] *Eskin v. Carden*, 842 A.2d 1222, 1228 (Del. 2004) (cited by Homeowners – is this the best case for this?).

[50] *See* Transcript at 84.

Plaintiffs' Liability Expert, Frederick S. Roland and Partial Summary Judgment is DENIED; and Defendants-Counterclaim Plaintiffs-Third-Party Plaintiffs' Motion *in Limine* to Exclude the Testimony-Opinions of Michael F. Ferrier, Jr. is DENIED IN PART and GRANTED IN PART.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams
**Meghan A. Adams, Judge**