## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANA WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N17C-01-170 EMD |
| | ) | |
| WILLIAM H. PORTER, INC. d/b/a PORTER | ) | |
| CHEVROLET and GENERAL MOTORS, | ) | |
| LLC a/k/a GENERAL MOTORS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: April 24, 2017
Decided: July 20, 2017

*Upon General Motors LLC's Motion to Dismiss*
***GRANTED in part and DENIED in part***

Douglas A. Shachtman, Esquire, The Shachtman Law Firm, Wilmington, Delaware. *Attorneys for Ana Washington.*

Patrick M. Brannigan, Esquire, Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware. *Attorneys for General Motors LLC*

Mary E. Sherlock, Esquire, Weber Gallagher Simpson Stapleton Fires & Newby, LLP, Dover, Delaware. *Attorneys for William Porter, Inc.*

**DAVIS, J.**

## I. INTRODUCTION

This action arises out of the sale of a 2013 Chevrolet Malibu under a Certified Pre-Owned vehicle program established by Defendant General Motors LLC ("GM") and its local dealerships, including Defendant William Porter of Porter Chevrolet ("Porter"). Plaintiff Ana Washington sues GM and Porter for (i) Breach of Contract (Count I), (ii) Breach of Warranty (Count II), (iii) Common Law Fraud (Count III), (iv) Consumer Fraud Act (Count IV), and (v) Deceptive Practices in Consumer Contracts (Count V).

GM filed General Motors LLC's Motion to Dismiss (the "Motion"). The Motion seeks dismissal of all claims asserted against GM under Rule 12(b)(6). Subsequently, Ms. Washington filed Plaintiff's Response to Defendant General Motors LLC's Motion to Dismiss (the "Response"). The Court held a hearing on the Motion and the Response on April 24, 2017. At the hearing, counsel for Ms. Washington conceded that Ms. Washington did not have a cognizable claim for breach of contract against GM. Accordingly, on April 25, 2017, the Court entered an order dismissing Count I as against GM. The Court took all other matters under advisement.

This is the Court's ruling on the remainder of the issues raised in the Motion. For the reasons set forth below, the Court will **GRANT** the Motion as to Count V and **DENY** the Motion as to Counts II, III and IV.

## II. RELEVANT FACTS[1]

As a way to promote the purchase of used vehicles, GM established a Certified Pre-Owned ("CPO") vehicle program and accompanying marketing plan. Porter and other local GM dealerships across the country implemented the CPO program. GM and Porter marketed the program as encompassing, among other things, a detailed 172+ point inspection and reconditions process performed by highly trained mechanics.

The CPO program, as set forth in a CPO Operations Manual developed by GM, includes rules and standards dictating how dealers must implement the program. The CPO Operations Manual requires dealers to provide consumers with a written disclosure of a vehicle's inspection results, a copy of the GM Pre-Owned Vehicle Inspection Checklist (the "Inspection Checklist"),

---

[1] Unless otherwise indicated, the following are the Relevant Facts as alleged in the Complaint. For purposes of the Motion and the Response, the Court must view all well-pleaded facts alleged in the Complaint as true and in a light most favorable to Ms. Washington. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, C.A. No. 09C-09-136 JRS, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).

and a Certificate of Inspection. The Inspection Checklist must indicate all repairs or reconditioning that a vehicle required or that a mechanic performed. Additionally, the Certificate of Inspection must certify that the vehicle had a certified inspection and passed that inspection. The CPO Operations Manual further provides that commercial vehicles are excluded from the CPO program.

On April 9, 2013, a 2013 Chevrolet Malibu (the "Malibu") was purchased in Virginia and used as a rental vehicle. Thereafter, Porter purchased the Malibu at auction. Despite the fact that the Malibu had been used for commercial purposes, the Malibu was designated as a CPO vehicle, indicating that it had undergone the multipoint inspection process.

On January 10, 2014, Ms. Washington went to Porter and considered purchasing the Malibu. Ms. Washington asked about the vehicle's history. According to Ms. Washington, Porter represented that the vehicle only had one prior owner. Porter also failed to provide Ms. Washington with the Inspection Checklist or any other disclosure about damage and repairs. In addition, Ms. Washington requested a Carfax report which Porter apparently failed to provide.

Based on the representations made by Porter, and the fact that the vehicle was a CPO vehicle and "GM certified," Ms. Washington purchased the Malibu. On multiple occasions when Ms. Washington was driving the Malibu, the steering wheel locked and the car shut down. When Porter checked the car after these incidents, Porter told Ms. Washington that they could not find the problem. Later, a Porter technician informed Ms. Washington that the Malibu had a lifetime warranty to cover problems with steering, indicating that GM and Porter had been aware of the problem. The Malibu purportedly continues to have problems with the steering system.

### III. PARTIES' CONTENTIONS

GM moves to dismiss each claim in the Complaint under Civil Rule 12(b)(6). GM claims that Count V, the deceptive practices claim, should be dismissed because Ms. Washington never

entered into a contract with GM. GM also contends that the breach of warranty, fraud, and Consumer Fraud Act claims should be dismissed because GM itself never made any representations about the Malibu to Ms. Washington.

Ms. Washington argues that the claims for breach of warranty, fraud, and Consumer Fraud Act state claims for relief because GM made misrepresentations through its CPO program in an attempt to deceive and mislead consumers regarding GM certified vehicles. Finally, Ms. Washington argues that Count V states a claim for relief because a contract existed between her and Porter.

## IV. LEGAL STANDARD

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[2] However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[3]

## V. DISCUSSION

**A.    THE DECEPTIVE PRACTICES IN CONSUMER CONTRACTS CLAIM, COUNT V, MUST BE DISMISSED BECAUSE THERE IS NO CONTRACT BETWEEN MS. WASHINGTON AND GM**

Ms. Washington's Count V—Deceptive Practices in Consumer Contracts Claim—arises from GM's purported misrepresentations regarding the quality of the Malibu and its eligibility for the CPO program. Regardless of the validity of these claims, Ms. Washington cannot

---

[2] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[3] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

maintain a claim for deceptive practices in consumer contracts because there was no contract between her and GM.

Ms. Washington argues that a separate contract with GM is not required to maintain a claim for deceptive practices. Instead, Ms. Washington attempts to join GM into the contract she executed with Porter and contends that GM's alleged misrepresentation that the Malibu was "GM certified" sounds a claim for deceptive practices. In support of this argument, Ms. Washington asserts that "there is nothing in the Act that requires an offender to be a literal party to a contract."[4]

The Court does not agree with Ms. Washington's argument. In order to maintain a claim for deceptive practices under the Delaware's Consumer Contracts Act ("DCCA"), a contract must exist between a consumer and a seller. Section 2732 of the DCCA, entitled "Deceptive practices in consumer *contracts*," creates a cause of action stemming from "a *contract* for the sale or lease of merchandise" when an individual "distorts or obscures the terms, conditions or meaning of the *contract*" or "omits information required by law to be disclosed in *contracts* with a consumer."[5] Section 2733 then goes on to provide "factors that a court may consider in determining whether a *contract* complies with this subchapter."[6] These factors require the existence of an actual contract, as a court cannot determine whether "cross-references are confusing" or "sentences are unreasonably long or complex" without a contract to analyze.[7]

Moreover, the DCCA does not provide that a person or entity can be liable for deceptive practices in a contract it did not enter into, or in a contract between two other separate parties, as is the case here. Ms. Washington does not cite to a single case where a Delaware court has

---

[4] Resp. ¶ 26.
[5] 6 *Del. C.* § 2732 (emphasis added).
[6] 6 *Del. C.* § 2733 (emphasis added).
[7] *Id.*

relaxed the contract requirement or allowed a consumer to bring a claim against a non-party to a contract. The Court too has failed to find any case asserting a cause of action for deceptive practices that did not involve a contract between the seller and consumer.[8]

Consequently, the Court will dismiss Count V because Ms. Washington does not plead at any point in the Complaint that she entered into a contract with GM. It is clear from the Complaint that Ms. Washington and Porter entered into a contract for the sale of the Malibu. In addition, GM was not an express party to this contract. As such, GM may not be joined as a party to the contract for purposes of maintaining a claim under the DCCA. The Court, therefore, holds that Count V, under the DCCA, fails as a matter of law and must be dismissed as against GM.

**B.      THE COURT WILL NOT DISMISS THE BREACH OF WARRANTY, FRAUD, AND CONSUMER FRAUD ACT CLAIM AGAINST GM**

> *i.        Ms. Washington asserts minimal but sufficient facts to sustain a breach of warranty claim, Count II, against GM based on the representations made by GM regarding the Malibu and the CPO program*

The breach of warranty claim arises from the representations made by GM through its CPO program. Specifically, the Complaint states that GM's representation that the Malibu was a CPO vehicle and "GM Certified" misrepresented the safety of the car and "the known potential problems with Chevrolet Malibus and/or the specific conditions or existing problems with the subject Malibu."[9] At this stage in the litigation, Ms. Washington asserts minimal but sufficient facts to state a claim against GM for breach of warranty.

---

[8] *See e.g., Lee ex. rel. B.L. v. Picture People, Inc.*, C.A. No. K10C-07-022, 2012 WL 1415471, at *8 (Del. Super. Mar. 19, 2012) (finding that a receipt between the seller and buyer was not a written contract such that buyer could state a claim under the DCCA); *Ewing v. Bice*, No. 0L1-04-013, 2001 WL 880120, at * 8 (Del. Super. Jul. 25, 2001) (finding the DCCA applicable to a construction contract); *Chrysler First Fin. Serv. Corp. v. Revells*, C.A. No. 91L-06-12, 1993 WL 542051, at *8–9 (Del. Super. Nov. 17, 1993) (finding the DCCA applicable to a mortgage loan).
[9] Compl. ¶ 53.

Because the sale involved a transaction in goods, Article 2 of Delaware's Uniform Commercial Code ("UCC") controls the nature and extent of the warranties.[10] Under the UCC, an express warranty may be created by "an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."[11] An express warranty may also be created through "any description of the goods which is made part of the basis of the bargain" or by showing "any sample or model which is made part of the basis of the bargain."[12] In order to make out a claim for breach of express warranty, the consumer must produce evidence of reliance on the express warranty.[13]

Ms. Washington asserts that GM breached the express warranty that the Malibu she purchased was a CPO vehicle and "GM Certified." Paragraphs 3–24 of the Complaint detail GM's participation in and oversight of the CPO program and the representations made by GM as part of the program.[14] The Complaint alleges that the representations about the CPO program emanated from GM, including through the CPO Operations Manual created by GM and provided to local dealerships.[15] The Complaint further alleges that the representations concerned the good at issue—the Malibu—because GM represented to Ms. Washington that the Malibu was a CPO vehicle and "GM certified."[16] Finally, the Complaint alleges that Ms. Washington relied on "the fact that the Malibu was a CPO" in purchasing the Malibu.[17] In short, Ms. Washington claims that by representing the Malibu as "GM Certified," GM was promoting the vehicle as part of its

---

[10] *Neilson Bus. Equip. Ctr., Inc. v. Italo V. Monteleone, M.D., P.A.,* 524 A.2d 1172, 1174 (Del. 1987).
[11] 6 *Del. C.* § 2–313(1)(a).
[12] 6 *Del. C.* § 2–313(1)(b)–(c).
[13] *See Barba v. Carlson*, C.A. No. N11C-08-050, 2014 WL 1678246, at *5 (Del. Super. Apr. 8, 2014) (citing 6 *Del. C.* § 2 –313(1)).
[14] *See* Compl. ¶¶ 3–24.
[15] *Id.* ¶¶ 7, 10–17.
[16] *Id.* ¶¶ 22–23, 28, 53–54.
[17] *Id.* ¶¶ 36, 57.

7

CPO program and in turn representing that each certified vehicle had been carefully inspected and was without defect.

GM argues that Ms. Washington cannot maintain a breach of warranty claim against it because GM never made any direct representations to Ms. Washington. Rather, the Complaint only states instances where Porter made misrepresentations regarding the Malibu to Ms. Washington.[18] Even though GM did not make a direct representation to Ms. Washington, this does not defeat her claim for breach of express warranty. As discussed above, the Complaint asserts instances where GM marketed the CPO program and certified the Malibu bought by Ms. Washington as "GM certified."

The Court does not believe that Count II states a very strong claim against GM. Moreover, the Court believes that GM has the stronger argument, as it is unclear how much oversight GM had over the Porter dealership or the designation of the Malibu as a CPO vehicle and "GM Certified." However, the Court cannot—drawing all reasonable inferences in favor of the non-moving party—find, at this stage of the civil action, that Ms. Washington would not be entitled to recover under any reasonably conceivable set of circumstances. As such, the Court will deny the Motion as to Count II.

### ii. *Ms. Washington asserts minimal but sufficient facts to sustain a fraud claim, Count III, against GM based on the representations made by GM regarding the Malibu and the CPO program*

The fraud claim arises from Defendants material misrepresentation that the Malibu was a CPO vehicle and Ms. Washington's purported reliance on that misrepresentation. For many of the reasons discussed above, the Court finds that the facts asserted to support a claim of fraud, while minimal, are sufficient at this stage in the litigation to survive dismissal under Civil Rule 12(b)(6).

---

[18] *See id.* ¶¶ 31, 34, 36.

8

The Civil Rules require all allegations of fraud to be pleaded with particularity.[19]  In order to meet the particularity requirement, a complaint "must state the time, place, and contents of the alleged fraud, as well as the individual accused of committing the fraud."[20]  On the content requirement, the following elements must be pleaded to state a claim for fraud:

> (1) a false representation, usually of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[21]

The Complaint asserts that the fraud occurred generally throughout GM's marketing of its CPO program, and specifically on November 26, 2013 when GM and Porter designated the Malibu as a CPO vehicle.  The Complaint names GM and Porter as the individuals accused of committing the fraud, and states that the fraud occurred through the CPO program and at the Porter dealership.

The Complaint is weakest on the content prong.  The Complaint asserts that the false representation of fact is that GM promoted the Malibu as "GM certified" when, in fact, the Malibu was not eligible to be a CPO vehicle and had not undergone the required inspections for a CPO vehicle.[22]  The Complaint further alleges that GM knew the representation was false because it was aware of the potential problems with Chevrolet Malibus and did not disclose them to consumers.[23]  The Complaint goes on to assert that GM had purportedly known about the problems and, in order to avoid a recall, issued a lifetime warranty to cover problems with the

---

[19] Del. Super. Civ. R. 9(b).
[20] *Universal Capital Mgmt., Inc. v. Micco World, Inc.,* C.A. No. N10C-07-039, 2012 WL 1413598, at *2 (Del. Super. Feb. 1, 2012).
[21] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).
[22] Compl. ¶¶ 22–23; 29, 56(a)–(d).
[23] *Id.* ¶¶ 40, 56(c).

9

steering system.[24]  The Complaint states that Ms. Washington, when deciding to purchase the Malibu, relied on the CPO marketing plan created by GM, and the designation of the vehicle as CPO.[25]  Finally, the Complaint alleges that Ms. Washington suffered damages as a result of her reliance on GM's representations.[26]

Once again, GM alleges that the Complaint is devoid of any allegations that GM made a representation to Ms. Washington concerning the Malibu.  While the Court again believes that GM has the stronger argument, it must draw all reasonable inferences in favor of Ms. Washington.  Based on the facts asserted in the Complaint—and taking those facts as true, the Court can, at least, see an argument that GM committed fraud by certifying Malibus as "GM Certified" and engaging in an extensive marketing plan to induce consumers to purchase GM certified vehicles even though GM knew that Malibus had a steering system defect and were ineligible for its CPO program.  The Court will be in a better position to resolve this issue, as well as the breach of warranty issue, after the parties develop the record through discovery.  However, at this early stage in the proceedings, the Court must deny the Motion as to Count III.

### iii.   *Ms. Washington can sustain a claim under the Consumer Fraud Act, Count IV, because, under the lower standard for consumer fraud claims, the Complaint asserts facts indicating GM engaged in negligent misrepresentation*

Ms. Washington argues that GM violated the Delaware Consumer Fraud Act ("DCFA") because GM, in the ordinary course of business, engaged in a scheme to deceive and mislead consumers as to GM certified vehicles.  Because the pleading standard under the DCFA is less strict than the pleading standard for common law fraud, Ms. Washington asserts sufficient facts to make out a claim under the DCFA.

---

[24] *Id.*
[25] *Id.* ¶¶ 2, 36.
[26] *Id.* ¶¶ 58–59.

Delaware law provides an additional cause of action for fraud under the DCFA.[27] The purpose of the DCFA is to "protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within the State."[28] With this purpose in mind, the DCFA makes it easier to establish a claim for consumer fraud than common law fraud.[29] Under the DCFA, (i) a negligent misrepresentation is sufficient to violate the statute, (ii) the plaintiff need not demonstrate actual reliance, and (iii) the plaintiff need not prove the defendant's intent to induce action/refraining from action.[30] If a plaintiff cannot at least prove the existence of a negligent misrepresentation, the plaintiff cannot make out a claim under the DCFA.[31]

Even if Ms. Washington cannot prove that GM made a false representation—as is required for common law fraud (Count III), Ms. Washington has pleaded sufficient facts that GM made a negligent misrepresentation. The Complaint asserts that GM does not impose sufficient supervision and/or accountability related to its CPO program.[32] Despite a lack of accountability and/or standards relating to implementation of the CPO program, GM still promoted the CPO program and designated the Malibu as "GM certified."[33] The Complaint asserts that this misled

---

[27] The CFA provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 *Del C.* § 2513.

[28] 6 *Del. C.* § 2512. To uphold a claim under the DCFA, plaintiffs must first demonstrate the some conduct took place in Delaware. *See Marshall v. Priceline, Inc.*, C.A. No. 05C-02-195, 2006 WL 3175318, at *2 (Del. Super. Oct. 31, 2006). Neither party contests applicability of the DCFA on this ground, and the Court is satisfied that as a resident consumer, Ms. Washington can demonstrate that at least some conduct took place in Delaware.

[29] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

[30] *Id.*

[31] *See Carey v. Estate of Myers*, C.A. No. S11C-10-029, 2015 WL 4087056, at *19 (Del. Super. Jul. 1, 2015) (finding that defendants could not counterclaim for fraud under the DCFA because defendants did not prove that plaintiffs made a negligent misrepresentation).

[32] Compl. ¶¶ 18–19.

[33] *Id.* ¶¶ 22–23.

consumers to believe that GM stood behind its CPO program and the vehicles it designated as CPO.[34]

These facts, taken together, create at least an inference that GM made a negligent representation when it designated the Malibu as "GM Certified," without first ensuring that the vehicle was eligible for its CPO program and was of certified quality. As such, the Court will not dismiss Count IV.

## VI. CONCLUSION

For the reasons set forth above, the Court **GRANTS in PART and DENIES in PART** General Motors LLC's Motion to Dismiss. As to GM, Count V is dismissed for failing to state a claim upon which relief can be granted. Ms. Washington may, at this stage of the proceedings, continue to pursue Counts II, III and IV against GM.

Dated: July 20, 2017
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

---

[34] *Id.* ¶ 24.